## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ALFREDO CHAVEZ GARCIA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20-cv-357-NJR** |
| | ) | |
| **DAMON ACUFF, in his capacity as** | ) | |
| **Warden, Pulaski County Detention Center,** | ) | |
| | ) | |
| **ROBERT GUADIAN, in his official capacity** | ) | |
| **as Field Office Director, Chicago** | ) | |
| **Field Office, U.S. Immigration and Customs** | ) | |
| **Enforcement,** | ) | |
| | ) | |
| **MATTHEW T. ALBENCE, in his official** | ) | |
| **capacity as Deputy Director and Senior** | ) | |
| **Official Performing the Duties of Director of** | ) | |
| **U.S. Immigration and Customs Enforcement,** | ) | |
| | ) | |
| **and** | ) | |
| **CHAD WOLF, in his official capacity as** | ) | |
| **Acting Secretary of the U.S. Department of** | ) | |
| **Homeland Security,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Alfredo Chavez Garcia (Chavez) is currently in immigration detention at the Pulaski County Detention Center in Ullin, Illinois (Pulaski). (Doc. 1). He filed his Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Injunctive Relief on April 15, 2020, to challenge the constitutionality of his detention and seek immediate release. In light of the Court's findings outlined below, Chavez's request for preliminary injunctive relief in the form of immediate release is **GRANTED**.

1

BACKGROUND

Chavez is a Mexican national, age 49, who has resided continuously in the United States since age 10. He is a Lawful Permanent Resident (LPR) and has six children who are United States citizens. The youngest two are 12 and 18 years old, and their mother is deceased. Chavez has diabetes and high blood pressure. (Doc. 1, pp. 27-28). He has been at Pulaski since March 2020. If he is released, he would return to his home in Chicago where he can self-isolate for 14 days. (Doc. 1-1).

Chavez has been in ICE custody since May 2, 2019, after his probation was revoked on a July 2017 attempted burglary conviction. (Doc. 10, pp. 2-6). ICE began removal proceedings in May 2019 based on this and prior criminal convictions. On November 27, 2019, Chavez's U.S. citizen adult son filed an I-130 Petition for Alien Relative on Chavez's behalf, which is still pending, and if granted, would provide Chavez with relief from removal.

DISCUSSION

A telephonic hearing was held on Tuesday, April 21, 2020. At that hearing the Court considered Chavez's testimony, as well as the evidence presented by the parties in their briefs and attached sworn declarations. Respondents were ordered to supplement the record with Chavez's medical records and a status update on COVID-19 testing at Pulaski, which were filed on Friday, April 24, 2020. (Docs. 15, 16). Chavez filed a supplemental declaration on Monday, April 27, 2020. (Doc. 17).

The Court finds that it has authority to issue injunctive relief pursuant to Federal Rule of Civil Procedure 65(b), as well as through the court's inherent power in habeas corpus cases to order a petitioner's release pending the decision in his or her case, as the Seventh Circuit has held in *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985) ("[F]ederal district judges in habeas corpus and section 2255 proceedings have inherent power to admit applicants to bail pending the decision of their case . . . ."). In order to obtain injunctive relief, Chavez bears the burden to establish that he has a reasonable likelihood of success on the merits of the Petition; that in the absence of an injunction he

will suffer irreparable harm; and that he has no adequate remedy at law. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); FED. R. CIV. P. 65.

The Court finds that Chavez's immediate release from custody is appropriate and necessary. He faces an imminent risk of severe illness and potentially death if he remains in detention. This constitutes irreparable harm. Chavez has chronic medical conditions, including Type 2 diabetes and hypertension. According to CDC guidelines, a person with diabetes, such as Chavez, is at high risk of suffering serious complications including death if he contracts the COVID-19 virus. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (stating that "those at high-risk for severe illness from COVID-19 are . . . people of all ages with underlying medical conditions, particularly if not well controlled, including . . . diabetes").

Of particular concern to the Court is Chavez's testimony, his most recent declaration (Doc. 17-1), and the medical documentation, which reveal that while he is taking two medications for control of his diabetes, his blood sugar levels are not being tested on a regular basis. Chavez states his blood sugar should be checked at least three times per week, but at Pulaski the intervals between tests have ranged from three to seven days. At a previous detention facility, he had checks every other day. While at home, he would test his blood sugar once each day. He has a significant family history of diabetes; both his parents and one sibling died from this condition. Since being in Pulaski, Chavez had a toe injury resulting in a serious infection, and he has not been provided with the diabetic shoes which he had been prescribed. He has leg pain and vision problems which may be related to his diabetes. The infrequency of blood sugar monitoring offered to Chavez indicates that management of his diabetic condition at Pulaski is less than ideal, heightening his risk for serious complications if he should become infected with COVID-19.

While officials at Pulaski have taken significant steps recently to reduce the possibility of COVID-19 infection among detainees, the Court finds that those efforts are inadequate to protect Chavez or to sufficiently address his health needs and particular risks. Social distancing is impossible

to practice; detainees eat their meals seated next to each other and sleep on bunks in the same unit in close proximity to where they eat. He also testified that he does not have adequate access to soap in order to practice good hand washing techniques.

Chavez was moved into C Pod with 15 other detainees on April 16, 2020, bringing the total number of detainees in C Pod to about 53 people. He reports that on Friday, April 24, 2020, he and the same group of 15 others were moved from C Pod to A Pod, where they were joined the next day by three people who had been released from the infirmary, for a total of 19 people in A Pod. Thus, despite the efforts at Pulaski to keep detainees in separate pods away from one another, Chavez has been newly exposed to other detainees on two occasions within a 10-day period.

COVID-19 infections have been diagnosed at Pulaski. As of Friday, April 24, 2020, a total of 10 detainees have tested positive for COVID-19; these persons have been held in medical isolation. (Doc. 15). As of April 24, 2020, one other detainee was in medical isolation awaiting results of a COVID-19 test. (Doc. 15-1). A total of 11 staff members have tested positive; three have been cleared to return to work by the Illinois Department of Public Health, and the others remain away from the facility.

The Court further finds that Chavez has a likelihood of success on the merits of his habeas corpus claims. He argues that his constitutional right under the Due Process Clause for safety and adequate medical care in government custody is being violated. A number of federal courts have found such claims likely to be meritorious. Chavez further argues that the length of his detention without a bond hearing violates his procedural due process rights. His detention is approaching one year, and the adjudication of his I-130 is likely to be delayed because of the ongoing public health emergency. Numerous courts have recognized the merits of these claims as well.

Finally, the Court finds that it is in the public interest to release Chavez, both because of the obvious risk of keeping vulnerable individuals in detention, and because the public has an interest in upholding the Constitution. To be sure, the Government has an interest in enforcing immigration laws,

4

but the Court finds that Chavez does not present a flight risk because of his family ties, especially as the sole parent to his minor child, and in light of the need to quarantine during the COVID-19 pandemic. The Court further finds that Chavez does not pose a danger to society. His criminal convictions did not involve crimes of violence and most of them are remote in time.

### CONCLUSION

For these reasons, the Court exercises its inherent authority in habeas corpus and under Federal Rule of Civil Procedure 65(b) to grant Petitioner Alfredo Chavez Garcia bail pending the resolution of his Petition for Writ of Habeas Corpus. Chavez's request for immediate release is **GRANTED**.

Respondents are **ORDERED to IMMEDIATELY RELEASE** Alfredo Chavez Garcia pending further order of the Court, pursuant to the following conditions of bond:

1. Petitioner will reside at his residence and shall provide his address and telephone contact information to Respondents;

2. If Department of Homeland Security (DHS) determines that Petitioner is an appropriate candidate for Alternatives to Detention (ATD), then Petitioner will comply with DHS instructions as to any ATD conditions;

3. Petitioner will comply with national, state, and local guidance regarding staying at home, sheltering in place, and social distancing and, until returned to ICE detention, he shall be placed on home detention;

4. The Court's order for release from detention shall be revoked should Petitioner fail to comply with the order of release as set forth by the Court;

5. The Court's order does not prevent Respondents from taking Petitioner back into custody should Petitioner commit any crimes that render him a threat to public safety or otherwise violate the terms of release;

6. Petitioner will be transported from Pulaski County to his home by identified third persons;

7. Petitioner will not leave his residence except for medical care; to obtain the necessities of life such as food; or to obtain necessary care for his minor child;

8. Petitioner will not violate any federal, state, or local laws; and

9. At the discretion of DHS and/or ICE, to enforce the above restrictions, Petitioner's whereabouts will be monitored by telephonic and/or electronic and/or GPS monitoring and/or location verification system and/or an automated identification system.

**IT IS FURTHER ORDERED** that this matter shall proceed for consideration of the merits of the remaining claims presented in the Petition. Accordingly, Respondents shall have **21 days** from the date of this Order (**up to and including May 18, 2020**) to submit their formal response to the Petition. Thereafter, Chavez may file his reply within **14 days** after the response is filed.

Petitioner Chavez is **ADVISED** of his continuing obligation to keep the Clerk (and Respondents) informed of any change in his whereabouts during the pendency of this action. This notification shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to provide such notice may result in dismissal of this action. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  April 27, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**